IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   11-cv-02260-WYD-MJW

EUGENE DURAN,

      Applicant,

v.

RAY TIMME, Warden CTCF, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

Applicant, Eugene Duran, is a prisoner in the custody of the Colorado

Department of Corrections who currently is incarcerated at the Colorado Territorial

Correctional Facility in Cañon City, Colorado.  Mr. Duran, acting *pro se*, initiated this

action by submitting to the Court on August 29, 2011, an Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1).  He was granted leave to

proceed *in forma pauperis*.  Mr. Duran is challenging the validity of his conviction and

sentence in Case No. 05CR539 in the Arapahoe County District Court in Centennial,

Colorado.  ECF No. 1 is an example of the convention I will use throughout this order to

identify the docket number assigned to a specific paper by the Court's electronic case

filing and management system (CM/ECF).

### I.  Federal Habeas Corpus Proceedings

On September 12, 2011, the court entered an order (ECF No. 4) directing

Respondents to file within twenty-one days a pre-answer response and address the

affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state

court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either

or both of those defenses. On September 29, 2011, Respondents filed a pre-answer

response (ECF No. 7). On October 25, 2011, Mr. Duran filed a reply (ECF No. 9).

On November 25, 2011, the court directed Respondents to submit a supplement

because they argued in the pre-answer response that Mr. Duran failed to exhaust all of

his claims in the state courts through his postconviction motion pursuant to Rule 35(c) of

the Colorado Rules of Criminal Procedure. ECF No. 11. The November 25 order noted

that the court could not determine definitively from the state court documents provided

by Respondents what claims Mr. Duran presented to the state appellate courts in his

postconviction proceeding because Respondents failed to submit a copy of Mr. Duran's

opening brief to the Colorado Court of Appeals in *People v. Duran*, No. 09CA2225

(Colo. Ct. App. Jan. 27, 2011) (unpublished). Therefore, the court directed

Respondents to provide a copy of the opening appellate brief. In addition, the court

directed Respondents to resubmit exhibits C and C2 to the pre-answer response as one

amended exhibit C, because exhibits C and C2 were unnecessarily divided in a manner

difficult for the court to understand when viewing the exhibits on CM/ECF. On

November 28, 2011, Respondents submitted the supplement (ECF No. 12) to the pre-

answer response.

On February 1, 2012, the court ordered Mr. Duran to show cause why the

application should not be denied as a mixed petition. ECF No. 13. The court informed

Mr. Duran that, in order to avoid dismissal of the application as a mixed petition, he may

2

elect to dismiss voluntarily any unexhausted claims and pursue only those claims for which state remedies already had been exhausted.  The court warned Mr. Duran that, if he failed to provide a clear response indicating his intentions, he will have failed to show cause as directed, and the court would dismiss the instant action as a mixed petition. The court also informed him that, alternatively, if he wished to pursue all of his claims in federal court, the action would be dismissed without prejudice so that he may exhaust state remedies before filing a new habeas corpus application.

On March 14, 2012, Mr. Duran filed a motion (ECF No. 19) and supporting memorandum (ECF No. 20) requesting leave to amend his application.  On March 21, 2012, the court entered an order (ECF No. 21) granting the motion and permitting Mr. Duran to file an amended application.

On April 9, 2012, instead of filing an amended application, Mr. Duran filed a second motion to add new claims.  ECF No. 22.  On April 10, 2012, the court denied the motion by minute order (ECF No. 23) as not complying with the March 21 order, and granted Mr. Duran one final opportunity to file an amended application in compliance with the March 21 order.

On April 19, 2012, Mr. Duran filed an amended application (ECF No. 24) and an objection (ECF No. 25) to the April 10 minute order with an additional five claims he wanted to add to the amended application.  On April 27, 2012, the court overruled the objection, finding that:

> This Court has provided Mr. Duran with every opportunity to submit a viable amended application as directed.  Instead, in his objection, Mr. Duran has delayed his own litigation of this lawsuit through a back-door attempt

> to amend his amended application by asserting an additional
> five claims that could or should have been raised in the
> application he originally filed.  Nothing in the traditions of
> habeas corpus requires a federal court to tolerate such
> needless piecemeal litigation.

ECF No. 26 at 5.  The court also ordered Mr. Duran to file a second and final amended

application on the Court-approved habeas corpus form that asserted all the exhausted

claims he intended to raise in this action.  *Id.*  On May 14, 2012, Mr. Duran filed the

second and final amended application (ECF No. 27).

On May 15, 2012, the court ordered Respondent to file a second pre-answer

response.  ECF No. 28.  On July 2, 2012, after being granted an extension of time,

Respondents filed the second pre-answer response (ECF No. 34).  On July 24, 2012,

Mr. Duran filed a reply (ECF No. 35) to the second pre-answer response.  On August

13, 2012, the action was reassigned to me.  ECF No. 37.

On September 25, 2012, I entered an order (ECF No. 40) denying the second

and final amended application in part.  Specifically, claims one, four, seven, eight, nine,

ten, eleven, and twelve were dismissed as time-barred.  Claim ten was dismissed for

failure to state a cognizable federal constitutional claim.  Claim six was dismissed as

procedurally defaulted.  In the September 25 order I also directed Respondents to file

an answer that fully addressed the merits of timely and exhausted claims two, three,

and five within thirty days after the state court record was filed.  Claims two, three, and

five remain pending.  In a separate order also entered on September 25 (ECF No. 41), I

directed Respondents to provide the state court record, which was filed on October 1,

2012 (ECF No. 44).  On October 4, 2012, Mr. Duran filed a motion (ECF No. 45)

characterized as a motion to alter or amend judgment, seeking reconsideration of the September 25 partial dismissal order.

On October 30, 2012, Respondents filed their answer (ECF No. 47).   On January 2, 2013, after being granted an extension of time, Mr. Duran filed his reply (ECF No. 51).

I must construe liberally Mr. Duran's filings because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the motion to alter or amend judgment will be treated as a motion to reconsider and denied.  In addition, for the reasons stated below, the application will be denied.

## II.  State Court Proceedings

On March 14, 2005, Mr. Duran was charged in Arapahoe County District Court Case No. 05CR539 with second-degree kidnapping involving robbery, a class-two felony; aggravated robbery, a class-three felony; conspiracy to commit second-degree kidnapping, a class-three felony; first-degree aggravated motor vehicle theft, a class-four felony; menacing, a class-five felony; and a crime of violence sentencing enhancer. *See* ECF No. 12 (supplement to pre-answer response), ex. C (appellant's opening brief in *People v. Duran*, No. 06CA0245 (Colo. Ct. App. July 10, 2008) (*Duran I*) at 8.  A jury convicted him of all charges except for the conspiracy count, and found that he possessed and threatened the use of a deadly weapon during the commission of the crimes.  *See id.*, *see also* ECF No. 7 (pre-answer response), ex. B (state court register

5

of actions) at 6.  The trial court imposed an aggregate thirty-year prison sentence.  *See* ECF No. 7, ex. B at 5.

On February 3, 2006, Mr. Duran appealed directly from his conviction, alleging that the trial court erroneously admitted evidence of a co-conspirator's guilty plea, failed to sanction the prosecution for its nondisclosure of a witness's videotaped statement, and failed to merge the second-degree kidnapping, aggravated robbery, and felony menacing convictions.  *See* ECF No. 7, ex. B at 4; ECF No. 12, ex. C at 7.  On July 10, 2008, the Colorado Court of Appeals denied Mr. Duran's claims and affirmed his convictions.  *See* ECF No. 7, ex. D (*People v. Duran*, No. 06CA0245 (Colo. Ct. App. July 10, 2008) (*Duran I*).  On November 17, 2008, the Colorado Supreme Court denied certiorari review.  *See* ECF No. 7, ex. E.

On April 1, 2009, Mr. Duran filed a combined motion for sentence reconsideration pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure and for modification of violent crime mandatory sentencing.  *See* ECF No. 7, ex. B at 3.  On June 1, 2009, the trial court denied the motion.  *Id.*

On July 6, 2009, Mr. Duran filed a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c), alleging insufficient evidence, a discovery violation, an unconstitutionally unrepresentative jury venire, and ineffective assistance of trial and appellate counsel.  *See* ECF No. 7, ex. B at 2; ex. G (*People v. Duran*, No. 09CA2225 (Colo. Ct. App. Jan. 27, 2011)) at 2-3.  On September 21, 2009, the trial court denied the Colo. R. Crim. P. 35(c) postconviction motion.  *See* ECF No. 7, ex. B at 2.  On January 27, 2011, the Colorado Court of Appeal affirmed.  *See* ECF No. 7, ex. G.  On May 9, 2011, the Colorado Supreme Court denied certiorari review.  ECF No. 7, ex. H.

On August 29, 2011, Dr. Duran filed his original § 2254 application (ECF No. 1) in this Court.  On May 14, 2012, he filed the second and final amended § 2254 application (ECF No. 27).  As previously stated, on September 25, 2012, I entered an order (ECF No. 40) denying the second and final amended application in part.  Specifically, claims one, four, seven, eight, nine, ten, eleven, and twelve were dismissed as time-barred.  Claim ten was dismissed for failure to state a cognizable federal constitutional claim.  Claim six was dismissed as procedurally defaulted.

Mr. Duran objected to the partial dismissal in his motion characterized as a motion to alter or amend judgment (ECF No. 45) pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  However, since no judgment has been entered in the instant action, the motion to alter or amend judgment, liberally construed, will be treated as an interlocutory motion to reconsider, and denied for the reasons stated below.

### III.  Interlocutory Motion to Reconsider

A district court has discretion to revise interlocutory orders prior to entry of final judgment.  *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir.1991) (noting that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir.1988) (citing Fed. R. Civ. P. 54(b)).  The district court's discretion to revise its interlocutory orders is not limited by the standards for reviewing a post-judgment motion filed pursuant to Rule 59(e) or 60(b) of the Federal Rules of Civil

Procedure.  *See Raytheon Constructors, Inc. v. ASARCO, Inc.,* 368 F.3d 1214, 1217

(10th Cir. 2003) (stating that "[t]he district court was incorrect to treat [the plaintiff's]

motion for reconsideration [of an interlocutory order] under Rule 60(b) which only

applies to final orders or judgments.").

Mr. Duran contends I miscalculated the one-year limitation period in dismissing

claims one, four, seven, eight, nine, ten, eleven, and twelve as time-barred.

Specifically, he argues that his conviction became final on March 2, 2009 (ECF No. 45

at 4), not on February 17, 2009, as I calculated.  ECF No. 40 at 9.  He bases this

argument on the fact that the Colorado Court of Appeals' mandate entered in his direct

appeal on December 2, 2008, after the Colorado Supreme Court denied certiorari

review on November 17, 2008.  ECF No. 45 at 4.  Therefore, he argues, the one-year

limitation period should be calculated from December 2, 2008.  *Id.*

Mr. Duran's argument is without merit.  The entry of the appellate mandate is

irrelevant to calculating the one-year limitation period.  Pursuant to § 2244(d)(1)(A), a

state prisoner has one year to file a federal habeas corpus application running from "the

date on which the judgment became final by the conclusion of direct review of the

expiration of the time for seeking such review."  In the instant action, because Mr. Duran

sought certiorari review from his state supreme court but not the United States Supreme

Court, the judgment became final when the time for pursuing direct review in the federal

supreme court expired.  *See Gonzalez v. Thaler*, 132 S. Ct. 641, 652-654 (2012).  The

interlocutory motion to reconsider (ECF No. 45) will be denied.

## IV.  Analysis

### A.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Duran bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's

decision resulted from an unreasonable legal or factual conclusion does not require that

there be an opinion from the state court explaining the state court's reasoning."  *Id.* at

784.  Thus, "[w]hen a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the

contrary."  *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an

explanation, the habeas petitioner's burden still must be met by showing there was no

reasonable basis for the state court to deny relief."  *Id.* at 784.  In other words, the Court

"owe[s] deference to the state court's *result*, even if its reasoning is not expressly

stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court

"must uphold the state court's summary decision unless [the Court's] independent

review of the record and pertinent federal law persuades [the Court] that its result

contravenes or unreasonably applies clearly established federal law, or is based on an

unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178.

"[T]his 'independent review' should be distinguished from a full de novo review of the

petitioner's claims." *Id*.

Although *Richter* concerned a state-court order that did not address any of the

defendant's claims, its presumption is applicable when a state-court opinion addresses

some but not all of those claims.  *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013).

For purposes of § 2254(d), when a state court rules against a defendant in an opinion

that rejects some of the defendant's claims but does not expressly address a federal

claim, a federal habeas court must presume, subject to rebuttal, that the federal claim

was adjudicated on the merits.  *Id*. at 1094-96.  Federal habeas courts should not

assume that any unaddressed federal claim simply was overlooked because a state

court does not uniformly discuss separately every claim referenced by a defendant.  *Id*.

I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question I must answer under § 2254(d)(1) is whether Mr. Duran seeks to

apply a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly

established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (citation and internal quotation marks omitted). In conducting this analysis, I "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Duran bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. Claims

I now will address the merits of Mr. Duran's exhausted and remaining claims. Retaining the numbering in the second and final amended application, the claims are:

13

2.      Trial counsel was ineffective for failing to object to the co-defendant's testimony concerning his guilty plea.

3.      The trial court erred by declining to impose any sanctions resulting from the prosecution's failure to disclose the victim's *Crime Stoppers* interview.

5.      Trial counsel was ineffective for failing to request a lesser-included instruction of simple robbery.

### Claim Two and Five

First, I will address Mr. Duran's ineffective-assistance-of-counsel claims.  In his second claim he alleges that trial counsel was ineffective for failing to object to the co-defendant's testimony concerning his guilty plea.  In his fifth claim he contends trial counsel was ineffective for failing to request a lesser-included instruction of simple robbery.

It was clearly established when Mr. Duran was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Duran must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Mr. Duran's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Duran must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether Mr. Duran has established prejudice, the Court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Ineffective-assistance-of-counsel claims are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Mr. Duran fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed. *See Strickland*, 466 U.S. at 697.

The Colorado Court of Appeals applied the following law to Mr. Duran's second and fifth claims:

> To be entitled to reversal of a conviction as the result of defective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Carmichael v. People*, 206 P.3d 800, 805-06 (Colo. 2009).

> To establish the first prong, a defendant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance and show that, in light of all the circumstances of the case, counsel's identified acts or omissions were such that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 689; *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007).

The right to effective assistance of counsel is not a guarantee against mistakes of strategy or judgment in trial, as viewed in hindsight upon the return of an adverse verdict. *People v. Gandiaga*, 70 P.3d 523, 525 (Colo. App. 2002). Thus, mere disagreement regarding trial strategy will not support an ineffective assistance claim. *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994); *People v. Bossert*, 722 P.2d 998, 1010 (Colo. 1986); *see also Strickland*, 466 U.S. at 690-91 (strategic choices made after thorough investigation are "virtually unchallengeable"). However, an evidentiary hearing may be required where "the trial record reflects a seemingly unusual or misguided action by counsel, [because] it may not reflect whether counsel had a sound strategic motive or took the action because his alternatives were even worse." *Ardolino [v. People]*, 69 P.3d [73] at 77 [(Colo. 2003)].

To establish the prejudice prong of *Strickland*, a defendant must demonstrate a reasonable probability that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. Thus, it is not enough merely to show that the errors had some conceivable effect on the outcome; rather, it must be shown that there is a reasonable probability that the result of the proceedings would have been different. *Id.* at 693-94; *see also Davis*, 871 P.2d at 772.

An ineffective assistance claim will not succeed if a defendant fails to prove either prong of the test. *Strickland*, 466 U.S. at 697; *Dunlap*, 173 P.3d at 1062. Thus a court may resolve a claim on the basis that a defendant failed to demonstrate either deficient performance or prejudice. *See People v. Sparks*, 914 P.2d 544, 547 (Colo. App. 1996) (performance not deficient); *People v. Gresl*, 89 P.3d 499, 503 (Colo. App. 2003) (no prejudice).

ECF No. 7, ex. G at 10-12.

In applying the law to Mr. Duran's second claim that trial counsel was ineffective for failing to object to the co-defendant's testimony concerning his guilty plea, the Colorado Court of Appeals reasoned as follows:

On direct appeal, defendant argued for reversal because the trial court admitted evidence of the co-perpetrator's guilty plea. The division in *Duran I* determined admission of the evidence did not constitute plain error.  Defendant now renews this argument in the context of a claim of ineffective assistance of counsel. Because defendant failed to sufficiently allege either prong of *Strickland*, we conclude the trial court properly denied this claim.

The *Duran I* division noted that, although the guilty plea of a co-conspirator may not be used as substantive evidence of another's guilt, it may be admissible for other purposes if the accomplice testifies.  The division pointed out that defense counsel used the plea bargain to challenge the co-perpetrator's credibility during cross-examination and closing and concluded that the evidence was relevant to preempt a defense challenge to the co-perpetrator's credibility.  *See People v. Montalvo-Lopez*, 215 P.3d 1139, 1145 (Colo. App. 2008) (no error in admitting evidence of co-defendant's guilty plea); *People v. Brunner*, 797 P.2d 788, 789 (Colo. App. 1990).  Accordingly, admission of the evidence did not constitute plain error.

"Effective assistance of counsel . . . does not require an attorney to object to every possible error.  An attorney's trial strategy may encompass careful selection of critical errors for objection."  *Bossert*, 722 P.2d at 1010 (citation omitted).  Thus, whether defense counsel lodges a trial objection is typically a matter of strategy that will not support a claim of ineffective assistance of counsel.  *Sparks*, 914 P.2d at 548.  Defendant has not alleged facts which would demonstrate that counsel's decision not to object to evidence of the plea bargain, but instead to use it to challenge the co-perpetrator's credibility, was professionally unreasonable.

Moreover, defendant has failed to allege facts sufficient, in light of the record here, to satisfy the prejudice prong of *Strickland* by showing that such objection would have created a reasonable probability that the outcome of the proceeding would have been different.  Because the division in *Duran I* concluded that the testimony was relevant to preempt a defense challenge to the co-perpetrator's credibility, defendant cannot demonstrate a reasonable

> probability that the trial court would have abused its
> discretion by admitting the testimony over a defense
> objection.

ECF No. 7, ex. G at.14-15.

The Colorado Court of Appeals on direct appeal in *Duran I* determined that the evidence properly was admitted under Colorado law. *See Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994) ("[T]he admissibility of evidence in a state trial is a matter of state law."); *see also Hammil v. Tinsley*, 202 F. Supp. 76, 78 (D. Colo. 1962) (It is a fundamental rule that the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law.). "When a petitioner's federal habeas corpus claim is based upon a theory which can be determined as a matter of state law, the federal court is bound by a state court's interpretation of state law." *Clark*, 16 F.3d at 963; *see also Amador v. Quarterman*, 458 F.3d 397, 412 (5th Cir. 2006) (as federal habeas corpus court cannot review correctness of state court ruling under state law that evidence was admissible, there was no prejudice from counsel's failure to object).

Moreover, the state appeals court further determined that evidence of the co-defendant's guilty plea was admissible for a proper purpose. The Colorado Court of Appeals determined that defense counsel made the strategic decision to use the plea bargain to challenge the co-perpetrator's credibility, and Mr. Duran has not met his burden to overcome this presumption by showing that defense counsel's decision was not sound strategy under the circumstances. Therefore, counsel could not be have been ineffective for failing to object. *See United States v. Bosch*, 914 F.2d 1239, 1247 (9th Cir. 1990) (In the absence of a showing that evidence of the co-defendant's guilty

plea was not admissible, counsel's failure to object to the admission of such evidence is

neither unreasonable nor prejudicial.).  I find that the appeals court's analysis was not

contrary to, or an unreasonable application of, Supreme Court law and not based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  *See* 28 U.S.C. § 2254(d).

In applying the law to Mr. Duran's fifth claim that trial counsel was ineffective for

failing to request a lesser-included instruction of simple robbery, the Colorado Court of

Appeals again addressed defense counsel's strategy, and reasoned as follows:

> The defense is entitled to an instruction on a lesser
> included offense whenever there is a "rational basis for the
> jury to acquit the defendant of the original offense charged
> and convict the defendant of the lesser offense."  *People v.
> Skinner*, 825 P.2d 1045, 1046 (Colo. App. 1991).  However,
> "the decision to request a lesser offense instruction is
> strategic and tactical in nature, and is therefore reserved for
> defense counsel."  *Arko v. People*, 183 P.3d 555, 558-59
> (Colo. 2008).

> In this case, defendant moved for a judgment of
> acquittal, based in part on there being "a real question as to
> whether a weapon was actually used."  The court denied this
> motion, as well as defendant's subsequent renewed motion.
> The trial court then asked if defendant desired a lesser
> included charge instruction and counsel declined.

> Counsel's decision to not request a lesser included
> charge instruction where he believed the evidence
> supporting the deadly weapon element was weak is not the
> "seemingly unusual or misguided action" which requires a
> defendant be afforded the opportunity to prove the choice
> lacked any sound strategic motive.  *See Ardolino*, 69 P.3d at
> 79.  Rather, this "all or nothing" approach is considered a
> sound strategic choice.  *See People v. Romero*, 694 P.2d
> 1256, 1269 (Colo. 1985) ("In the absence of a request by the
> defendant, it may reasonably be assumed that he elected to
> take his chance on an outright acquittal or conviction of the

> principal charge rather than to provide the jury with an opportunity to convict on a lesser offense.").

> Because defendant failed to allege any facts suggesting this was anything other than counsel's strategic attempt to have defendant acquitted of the robbery charge in its entirety, defendant was not entitled to a hearing on this claim.

ECF No. 7, ex. G at 12-13.

It generally is a permissible exercise of trial strategy to effectuate an all-or-nothing theory of defense by not requesting instructions on lesser included offenses. *Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005). Such a strategy may be ineffective where failure to do so leaves the defendant with no defense. *Compare United States ex. rel. Barnard v. Lane*, 819 F.2d 798, 803-05 (7th Cir. 1987) (counsel's failure to tender justification and manslaughter instructions in a murder trial was ineffective where defendant admitted killing the victim), *with Kubat v. Thieret*, 867 F.2d 351, 365 (7th Cir. 1989) (no ineffective assistance of counsel where absence of a lesser included offense instruction did not erode defendant's alibi defense).

Here, it was reasonable for the state courts to determine that counsel was not ineffective by not requesting a lesser-included instruction on simple robbery. Mr. Duran's defense was a lack of evidence on the deadly weapon element of aggravated robbery, asserting a "real question as to whether a weapon was actually used." ECF No. 44 at 713 (R. at 184, Oct. 19, 2005). *See also, e.g.*, ECF No. 44 at 400-01 (R. at 117-18, Oct. 18, 2005); ECF No. 44 at 568, 575, 584, 655, 657-58, 661, 664, 668-69, 708-09, 711 (R. at 39, 46, 55, 126, 128-29, 132, 135, 139-40, 179-80, 182, Oct. 19, 2005); ECF No. 44 at 757-61, 762-63, 766, 768-70 (R. at 37-41, 42-43, 46, 48-

50, Oct. 20, 2005).  After renewing his motion for judgment of acquittal, Mr. Duran's

counsel rejected the opportunity provided by the court to offer a lesser included offense

to the jury.  ECF No. 44 at 732-33 (R. at 12-13, Oct. 20, 2005).  The absence of a

lesser-included-offense instruction did not erode Mr. Duran's defense.  To the contrary,

a lesser-included instruction would have invited the jury to convict on the lesser offense.

The Colorado Court of Appeals determined that defense counsel made the strategic

decision not to request a lesser-included-charge instruction, and Mr. Duran has not met

his burden to overcome this presumption by showing that defense counsel's decision

was not sound strategy under the circumstances.

Based on my review of the record, I do not find that the Colorado Court of

Appeals' decision was contrary to, or an unreasonable application of, Supreme Court

precedent, nor do I conclude that the decision by the state appeals court was based on

an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding.  *See* 28 U.S.C. § 2254(d).

### Claim Three

Finally, I will address Mr. Duran's third claim that the trial court erred by  declining

to impose any sanctions resulting from the prosecution's failure to disclose the victim's

*Crime Stoppers* interview.

It is well settled that prosecutors are obligated to disclose to defendants any

material exculpatory evidence they or the police possess.  *Kyles v. Whitley*, 514 U.S.

419, 432, 439 (1995); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  "There are three

components of a true *Brady* violation:  The evidence at issue must be favorable to the

accused, either because it is exculpatory, or because it is impeaching; that evidence

must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  "Prejudice satisfying the third element exists 'when the suppressed evidence is material for *Brady* purposes.'" *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)).  Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (internal quotation marks omitted).  A reasonable probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434 (internal quotation marks omitted).  There is no *Brady* violation where the material is disclosed during trial.  *See United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997).  A state court's resolution of a *Brady* claim is a mixed question of law and fact reviewed under § 2254(d)(1).  *See Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999).

The Colorado Court of Appeals addressed Mr. Duran's third claim as follows:

> Defendant next contends the trial court reversibly erred by failing to order a sanction or remedy as a result of the prosecution's failure to provide defendant a videotaped statement made by the victim.  We are not persuaded.
>
> Pursuant to Crim. P. 16(I)(a)(2), a prosecuting attorney shall disclose to defense counsel any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor. Evidence that bears on the credibility of a prosecution witness constitutes exculpatory evidence.  *See People v. Dist. Court*, 793 P.2d 163, 166 (Colo. 1990); *People v. Cevallos-Acosta*, 140 P.3d 116, 125 (Colo. App. 2005).

Further, Crim. P. 16(I)(a)(3) provides that a prosecutor's disclosure obligations extend to material and information in the possession or control of members of the prosecutor's staff and of "any others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported" to the prosecutor's office.  Crim. P. 16(I)(a)(3).  Thus, the disclosure obligation of Crim. P. 16(I)(a)(2) extends to law enforcement.  *See Dist. Court*, 793 P.2d at 166-67; *Cevallos-Acosta*, 140 P.3d at 125.

Here, during cross-examination, the victim testified that he had been interviewed by Crime Stoppers.  Crime Stoppers is a television news program designed to encourage members of the public to report information about crime.  *People v. Garcia*, 789 P.2d 190, 191 n.1 (Colo. 1990).

After examination of the victim and outside the presence of the jury, defense counsel informed the trial court that he was unaware of the Crime Stoppers interview.  The prosecution advised the trial court that it too was unaware of the interview.  Defense counsel did not request a continuance.  Instead, he requested a mistrial, arguing that the nondisclosure of the interview was a discovery violation under Crim. P. 16.  The trial court denied the motion but ordered that the prosecution obtain a copy of the Crime Stoppers interview.  It further agreed to hold a hearing to resolve the matter.

On the next day of trial, the trial court held a hearing at which defense counsel informed the trial court that both he and the prosecutor watched the interview and asserted that it contained statements by the victim and the lead police investigator on the case.

The lead investigator testified that she was ordered by her supervisors to facilitate the Crime Stoppers television program in developing a news story concerning the suspect involved in perpetrating the crime against the victim.  She testified that she coordinated with the television news channel reporter regarding the date and time of the interview.

She further testified that the interview was conducted in an auditorium of the Denver Police Department

headquarters.  However, she also testified that the television news reporter conducted the interview and the police neither interviewed the victim, nor assisted with the interview, though the lead investigator was present during the interview.

Further, although she testified that the Crime Stoppers interview was longer than the portion of the interview that aired on television, there was no testimony regarding the content of the film clips that were not used in the aired interview.  Likewise, there was no testimony about whether the television news channel still had possession of the unused portion of the interview.  Finally, she testified that she neither received a copy of the interview nor was offered a copy.

The trial court found that although the Crime Stoppers interview was created with the assistance of law enforcement, it was not done under the direction of law enforcement, and, therefore, did not constitute state action. It thus ruled that the nondisclosure of the interview did not constitute a discovery violation under Crim. P. 16.  Despite finding no violation, the trial court nevertheless permitted admission into evidence of a prior inconsistent statement, from the interview, concerning defendant's act of pulling the keys out of the ignition of the vehicle.  Defendant was permitted to impeach the victim and the lead investigator concerning the prior inconsistent statement.

Although a prosecutor's duty of disclosure extends to law enforcement, this duty arises only from material or information that is in the possession or control of law enforcement.  *See* Crim. P. 16(I)(a)(3).  The record demonstrates that the interview was conducted and developed by a local news channel.  Further, the film clips of the interview, including unused out-takes, were the property of the news channel and not law enforcement.  Under these facts, the nondisclosure of the Crime Stoppers interview did not constitute a discovery violation because the interview was not in the possession or control of law enforcement. *See Chambers v. People*, 682 P.2d 1173, 1180 (Colo. 1984). Moreover, no evidence was presented of an agency relationship between law enforcement and the television station, and the trial court's finding of no state action indicates no relationship existed.

We conclude the trial court did not abuse its discretion in failing to find a discovery violation with respect to the Crime Stoppers interview.  Although our review of the record did not reveal a finding by the trial court that the un-aired portions of the Crime Stoppers interview were not in the possession or control of law enforcement, the trial court's finding that the aired interview did not constitute state action, and thus was not in the possession or control of law enforcement, would logically extend to the un-aired portions.

Accordingly, we perceive no abuse of discretion in the trial court's failing to find a discovery violation.  Therefore, we conclude the trial court did not err in failing to order a remedy for an alleged discovery violation.

ECF No. 7, ex. D at 7-12.

Here, the victim disclosed the existence of the *Crime Stoppers* interview during the defense's cross-examination of him.  ECF No. 44 at 390 (R. at 107, Oct. 18, 2005).  Following cross-examination of the victim and outside the presence of the jury, defense counsel informed the trial court he was unaware of the *Crime Stoppers* interview.  ECF No. 44 at 405 (R. at 122, Oct. 18, 2005).  The prosecution informed the trial court she too was unaware of the interview.  ECF No. 44 at 405 (R. at 122, Oct. 18, 2005).  Instead of requesting a continuance to attempt to obtain the full interview, including unused out-takes, the defense opted to rely on the aired portion of the *Crime Stoppers* interview the prosecution obtained, and ultimately impeached the victim with a prior inconsistent statement.  *See* ECF No. 44 at 527 (R. at 242, Oct. 18, 2005); ECF No. 44 at 598-626, 690-98, 710-11, 714-15 (R. at 69-97, 161-169, 181-82, 185-86, Oct. 19, 2005).  Because Mr. Duran was able "to make use of any benefits of the evidence, Due Process [was] satisfied."  *Scarborough*, 128 F.3d at 1376.

The record also demonstrates the *Crime Stoppers* interview was not suppressed by the state.  The trial court found that, despite the creation of the *Crime Stoppers*

interview with the assistance of law enforcement, the interview was not conducted under the direction of law enforcement. ECF No. 44 at 621-22 (R. at 92-93, Oct. 19, 2005). Film clips of the interview, including unused out-takes, belonged to the news channel, not law enforcement. Police participation primarily involved the lead investigator's facilitation in development of the *Crime Stoppers* news story and her presence during the interview conducted by a television reporter in an auditorium of the Denver Police Department headquarters. Mr. Duran was not prejudiced by the prosecution's failure to disclose evidence not in their possession that was disclosed during trial. *See Kyles*, 514 U.S. at 432, 439; *see also Scarborough*, 128 F.3d at 1376. Because Mr. Duran fails to show prejudice from the prosecution's failure to disclose the victim's *Crime Stoppers* interview, the trial court did not err by declining to impose sanctions resulting from that failure.

There is adequate support in the record for the trial court's findings that the interview was not in the possession or control of law enforcement. The state courts' factual findings are afforded a presumption of correctness on habeas review. Mr. Duran does not allege, let alone establish by clear and convincing evidence, that the Colorado Court of Appeals' factual conclusions were unreasonable, given the trial evidence.

Despite the fact that the state appeals court did not expressly address the federal claim Mr. Duran asserts as his third claim, the deferential standards of § 2254(d) apply. *See Johnson*, 133 S. Ct. at 1094-96. Based on my review of the record, I do not find that the Colorado Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court precedent, nor do I conclude that the decision by the

state appeals court was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d).

## V.  Conclusion

For the reasons stated above, the application will be denied.

Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Duran files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the motion titled "Motion to Alter or Amend Judgment" (ECF No. 45) that Applicant, Eugene Duran, filed on October 4, 2012, and which I have treated as an interlocutory motion to reconsider, is **DENIED**.  It is

FURTHER ORDERED that the habeas corpus application is **DENIED**, and the action is **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  It is

FURTHER ORDERED that any pending motions are denied as moot.

Dated:  September 16, 2013.

BY THE COURT:


/s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE